STATE OF NORTH CAROLINA v. RUSSELL L. DORSEY

No. COA98-1233

(Filed 21 September 1999)

**1. Criminal Law— insanity—expert testimony—credibility for the jury—no directed verdict**

In a case involving assault with a deadly weapon with intent to kill inflicting serious injury, the trial court did not err by failing to direct a verdict of not guilty based on defendant's expert testimony stating defendant was insane because even if the evidence of insanity is uncontroverted, the credibility of that testimony is for the jury and thus precludes the entry of a directed verdict.

**2. Appeal and Error— preservation of issues—voluntariness of statement—constitutional issue—not raised at trial**

In a case involving assault with a deadly weapon with intent to kill inflicting serious injury, defendant failed to argue at trial about the voluntariness of his statement to a detective that "there was no second knife," and therefore, this issue cannot be raised on appeal.

Appeal by defendant from judgment dated 24 April 1998 by Judge Charles H. Henry in Onslow County Superior Court. Heard in the Court of Appeals 24 August 1999.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Hal F. Askins, for the State.*

*Delores Jones Faison, for defendant-appellant.*

GREENE, Judge.

Russell L. Dorsey (Defendant) appeals a judgment reflecting a jury verdict finding him guilty of assault with a deadly weapon with intent to kill inflicting serious injury for which he received a sentence of 151 months to 191 months in prison.

Before trial Defendant gave notice of his intent to raise insanity as a defense and pleaded not guilty. At trial the State's evidence, in summary form, tends to show that on 9 November 1996, Sharon L. Perry (Ms. Perry) was stabbed by Defendant, her boyfriend. A knife was found at the scene of the attack. As a consequence of the attack, Ms. Perry sustained multiple wounds to her left side, left flank, face, neck, chest, left shoulder, right arm, and right hand, with the most serious being lacerations to the diaphragm and colon. Ms. Perry remained hospitalized for five days and stayed out of work for approximately one month. After Defendant was arrested, he was advised of his constitutional *Miranda* rights and indicated he did not want to answer any questions without the presence of an attorney. While Defendant was waiting in the processing area of the police department to be fingerprinted, Detective Paul Harrington (Detective Harrington) had a conversation with other officers regarding organizing a search for an additional knife. The conversation took place in the presence of the Defendant. Upon hearing the conversation, Defendant spontaneously stated "there was no second knife."[1]

Defendant presented the testimony of Thomas Stack, Ph.D. (Dr. Stack), a clinical psychologist. Dr. Stack testified the admission notes of Cherry Hospital on 20 November 1996 suggested Defendant was quite psychotic and disorganized. He determined Defendant had previously been diagnosed as suffering from schizophrenia as early as 1990 with a history of psychotic and bizarre behavior and being out of touch with reality. Dr. Stack was of the opinion it was "highly likely at

---

1. At trial, Defendant objected to this testimony on the ground his *Miranda* rights had been violated. The trial court overruled the objection.

the time of the crime [D]efendant was actively psychotic and did not know fully what he was doing."

At the end of the State's case and again at the end of all the evidence, Defendant moved to dismiss the case on the ground the State "had failed to show any . . . intent . . . to kill." At the end of all the evidence Defendant also moved to dismiss the case on the ground the State had failed to rebut the testimony of Dr. Stack that Defendant was insane at the time of the assault. All these motions were denied.

[1] The dispositive issue is whether Defendant's expert testimony that he was insane entitled him to a directed verdict of not guilty based on his insanity defense.

Defendant argues he was entitled to a directed verdict of not guilty, based on his insanity, because he offered expert testimony that he was insane and the testimony was not contradicted by the State. We disagree.

Every person is presumed sane and the "burden of proving insanity is properly placed on the defendant in a criminal trial." *State v. Leonard*, 296 N.C. 58, 64, 248 S.E.2d 853, 856 (1978). Thus, "[i]f no evidence of insanity be offered the presumption of sanity prevails." *Leonard*, 296 N.C. at 65, 248 S.E.2d at 857. If evidence of insanity is offered by the defendant, even if un-controverted, the credibility of that testimony is for the jury and thus precludes the entry of a directed verdict for defendant on insanity. *Id.* (diagnosis of mental illness by expert is not conclusive on issue of insanity); *see Bank v. Burnette*, 297 N.C. 524, 536, 256 S.E.2d 388, 395 (1979) (directed verdict for party with burden of proof proper only when credibility is "manifest as a matter of law").

In this case, Defendant offered expert testimony that he was insane at the time of the assault. This evidence does not entitle Defendant to a directed verdict on the insanity issue, as the credibility of that testimony is for the jury. This is so, even in the absence of any testimony, lay or expert, from the State to contradict Defendant's expert testimony.[2] Accordingly, the trial court correctly denied Defendant's motion for directed verdict on this issue.

Defendant also moved for directed verdict on the grounds the State had failed in its burden of proving all the elements of the crime

─────────────

2. State offers it did present lay testimony on the issue of Defendant's sanity. We need not review that evidence for its sufficiency.

charged, particularly the element of assault with "intent to kill." Defendant's sole argument in support of this motion was that he could not form this intent to kill because of his insanity. As we have held that insanity was properly an issue for the jury, the trial court correctly denied this motion.

[2] Defendant finally argues in his brief to the Court that his statement to Detective Harrington that "there was no second knife" was inadmissible because it was not voluntarily given, a Fourteenth Amendment issue. *See State v. Johnson*, 304 N.C. 680, 683, 285 S.E.2d 792, 794 (1982) (citing *Rogers v. Richmond*, 365 U.S. 534, 540-41, 5 L. Ed. 2d 760, 766 (1961)). At trial, Defendant argued the statement was inadmissible on the ground his *Miranda* rights were violated, a Fifth Amendment issue. *Miranda v. Arizona*, 384 U.S. 436, 467, 16 L. Ed. 2d 694, 719 (1966). The voluntariness of the statement was not an issue raised at trial and thus cannot be raised in this Court. *State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988). We do not address the *Miranda* issue, as that matter is not argued by Defendant in his brief. *See State v. Davis*, 68 N.C. App. 238, 245, 314 S.E.2d 828, 833 (1984). Accordingly we do not address either issue.

No error.

Judges TIMMONS-GOODSON and HORTON concur.