STATE OF NORTH CAROLINA v. RANDY LEE SELLARS

No. COA04-289-2

(Filed 5 August 2008)

**Sentencing— aggravating factors—knowingly created great risk of death to more than one person by means of weapon or device normally hazardous to lives of more than one person—*Blakely* error—harmless beyond reasonable doubt**

The trial court committed harmless error beyond a reasonable doubt in a multiple assault with a firearm on a law enforcement officer, assault with a deadly weapon, assault with a deadly weapon inflicting serious injury, and discharging a firearm into occupied property case by considering evidence of aggravating factors not found by a jury or admitted by defendant because: (1) in regard to the finding that defendant committed the crime while on pretrial release under N.C.G.S. § 15A-1340.16(d)(12), defendant waived this issue under N.C. R. App. P. 28(b)(6) by failing to challenge it; and (2) in regard to the finding that defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person under N.C.G.S. § 15A-1340.16(d)(8), it was uncontroverted that defendant fired a semi-automatic weapon during his altercation with an officer, and a semi-automatic pistol in its normal use is hazardous to the lives of more than one person; a rational factfinder would find that a great risk of death was knowingly created to the lives of several people when defendant and police officers exchanged gun fire while customers were inside the store, customers ran from their cars into the store for safety when the shooting began, or they hid in their cars to avoid bullets; and even though defendant contends the trial court erred by presuming he was a reasonable person in order to find he know-

ingly created a great risk of death, the jury considered and rejected defendant's insanity defense.

Judge GEER dissenting.

On remand by order of the Supreme Court of North Carolina filed 19 December 2006 vacating in part and remanding the decision of the Court of Appeals, *State v. Sellars*, No. COA04-289, slip op. (Sept. 6, 2005), for reconsideration in light of *State v. Blackwell*, 361 N.C. 41, 638 S.E.2d 452 (2006). Defendant initially appealed from judgments entered 25 September 2003 by Judge James C. Spencer, Jr., in Alamance County Superior Court. Originally heard in the Court of Appeals 6 December 2004, reconsidered by the Court of Appeals on 21 May 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Hilda Burnett-Baker, for the State.*

*Jarvis John Edgerton, IV, for defendant-appellant.*

CALABRIA, Judge.

The Supreme Court of North Carolina remanded this case for reconsideration. We hold the trial court's error was harmless beyond a reasonable doubt and preserve defendant's sentence as determined by the trial court.

The facts described in *State v. Sellers* [sic], 155 N.C. App. 51, 574 S.E.2d 101 (2002) are repeated in this opinion. The State's evidence showed that just before 2 a.m. on 28 October 1999, Randy Lee Sellars ("defendant") entered the Pantry Convenience Store in Graham, North Carolina and told the clerk to call the police because he needed to speak to a law man. Defendant wore a uniform with an insignia which read "Department of Justice, Federal Bureau of Prisons." He carried two guns, a 9 millimeter semi-automatic Ruger pistol, and a .380 Lorcin semi-automatic pistol. The clerk testified that defendant's eyes were "kind of shiney [sic]," "like he had been drinking alcohol." The clerk called 911 and told the operator a man with the Department of Justice carrying two guns wanted some Graham police officers to come to the store. Three officers responded. Officers Peter Acosta and Sam Ray ("Officer Acosta" and "Officer Ray" respectively) arrived in one police car and Officer Christopher Denny ("Officer Denny") arrived in a separate police car. When Officer Ray arrived, he pulled up next to defendant. Officer Acosta asked defendant through

Officer Ray's open window, what was up. Defendant responded "nothing much" and then asked them if they thought that justice had been done in the world that day. When Officer Acosta noticed defendant's gun (the Ruger), he exited the car, drew his weapon and maneuvered to the rear passenger side. He warned Officer Denny, who was also exiting his car, that defendant had a gun and told him to get him away from the car. Officers Acosta and Denny each told defendant to put down the gun. Defendant said "I'm immortal" and asked if they believed in God. Defendant then shot into the air, maneuvered himself in front of the car and began shooting into the front of the car where Officer Ray was sitting. Officer Acosta fired at defendant, and defendant shot back at Officer Acosta. Officer Ray partially exited the car and fired a shot at defendant. Defendant then fired into Officer Ray's car door. Officer Ray was hit in the chest, but was not injured because he was wearing a protective vest. Officer Denny was crouched behind his patrol car when defendant's bullet struck his hand, rendering him unable to fire his weapon. During a short pause in the exchange of fire, Officer Denny ran towards the back of the Pantry building.

The gunfire between the officers and defendant occurred while customers were inside the store. When the shooting began, the customers who were in their cars ran into the store for safety. One such individual, Nathaniel Newton, was sleeping in the backseat of a vehicle stopped at the gas pumps and was awakened by the gunshots. He testified, "I sat and I thought. I was like, well, bullets hit the gas pumps and something, they could blow up, and like I could run into the store and be a little safer . . . . I just ducked my head and ran." Another customer, Toby Overman, was preparing to leave the parking lot in his truck when the shooting started. He crouched down in the seat and then exited the truck. He saw defendant with his gun and held up his hands. He sought cover first behind an ATM machine, and then behind the Pantry building.

As defendant headed north on South Main Street, additional officers arrived. Officer Chris Anderson, with the assistance of a P.A. system, directed defendant to drop his weapon. Defendant waved his gun in their direction and said "Bring it on." The officers shot defendant and were able to restrain him with handcuffs. The entire incident lasted three to four minutes. Officer Acosta recalled defendant repeatedly yelled that he "was the son of God and wouldn't die."

According to defendant's evidence, he suffered from a mental illness. He was honorably discharged from the Air Force and re-

STATE v. SELLARS

[191 N.C. App. 703 (2008)]

ceived a 30% mental disability rating. He had been taking medication but stopped before the incident. Four experts testified that in their opinion defendant did not know right from wrong at the time of the incident.

On 7 March 2001, the jury returned guilty verdicts for three counts of assault with a firearm on a law enforcement officer, one count of assault with a deadly weapon, one count of assault with a deadly weapon inflicting serious injury, and one count of discharging a firearm into occupied property. During sentencing, the trial court found as aggravating factors for all convictions that: (1) defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person; and (2) defendant committed the offenses while on pretrial release. The trial court found as mitigating factors for all convictions that defendant: (1) was suffering from a mental condition that was insufficient to constitute a defense but significantly reduced his culpability for the offenses; (2) was honorably discharged from the United States Air Force; (3) had a support system in his community; and (4) had a positive employment history or was gainfully employed. The trial court determined that the aggravating factors outweighed the mitigating factors and sentenced defendant in the aggravated range to four consecutive terms of a minimum of 31 months to a maximum of 47 months in the North Carolina Department of Correction.

## I. Procedural History

Defendant appealed to this Court and in an opinion issued 31 December 2002, we found no error at trial but remanded the case for re-sentencing. *State v. Sellers* [sic], 155 N.C. App. 51, 574 S.E.2d 101 (2002). Upon re-sentencing, the trial court again found as aggravating factors that: (1) defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person; and (2) defendant committed the offenses while on pretrial release. The trial court determined that the aggravating factors outweighed the mitigating factors and re-sentenced defendant in the aggravated range to the same term of incarceration as his initial sentence. Defendant appealed.

In an opinion issued 6 September 2005, this Court applied *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004) and determined the trial judge's consideration of evidence of aggravating

factors not found by a jury or admitted by the defendant violated the Sixth Amendment to the Constitution and warranted re-sentencing. *State v. Sellars*, No. COA04-289, slip op. (Sept. 6, 2005). The case was remanded to the trial court for re-sentencing.

On 19 December 2006, the Supreme Court vacated our order to remand to the trial court and remanded to this Court for reconsideration in light of *State v. Blackwell*, 361 N.C. 41, 638 S.E.2d 452 (2006). *Blackwell* applied *Washington v. Recuenco*, 548 U.S. 212, 165 L. Ed. 2d 466 (2006) to hold that a *Blakely* error is subject to harmless error review and not reversible *per se*. *Blackwell*, 361 N.C. at 42, 638 S.E.2d at 453.

Since this Court already determined the failure of the State to submit the issue of aggravating factors to the jury was a *Blakely* error, *Sellars*, No. COA04-289, slip op. at 1, and once decided, this issue became the law of the case, *State v. Moore*, 276 N.C. 142, 145, 171 S.E.2d 453, 455 (1970), the remaining issue for this panel to decide is whether the error was harmless beyond a reasonable doubt. *Blackwell*, 361 N.C. at 45, 638 S.E.2d at 455.

## II. Harmless Error Review

"In conducting harmless error review, we must determine from the record whether the evidence against the defendant was so 'overwhelming' and 'uncontroverted' that any rational fact-finder would have found the disputed aggravating factor beyond a reasonable doubt." *Blackwell*, 361 N.C. at 49, 638 S.E.2d at 458 (citing *Neder v. United States*, 527 U.S. 1, 9, 144 L. Ed. 2d 35, 47 (1999)). "The defendant may not avoid a conclusion that evidence of an aggravating factor is 'uncontroverted' by merely raising an objection at trial. Instead, the defendant must 'bring forth facts contesting the omitted element,' and must have 'raised evidence sufficient to support a contrary finding.' " *Id.*, 361 N.C. at 50, 638 S.E.2d at 458 (quoting *Neder*, 527 U.S. at 19, 144 L. Ed. 2d at 53) (internal citations omitted).

In his brief, defendant does not challenge the trial court's finding of the aggravating factor that he committed the crime while on pretrial release under N.C. Gen. Stat. § 15A-1340.16(d)(12). Therefore this assignment of error is deemed abandoned. N.C.R. App. P. 28(b)(6) (2007). We therefore examine whether a rational fact-finder would have found beyond a reasonable doubt that defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the

lives of more than one person. In imposing this factor under N.C. Gen. Stat. § 15A-1340.16(d)(8), the judge considers whether the weapon in its normal use is hazardous to the lives of more than one person and whether a great risk of death was knowingly created. *State v. Evans*, 120 N.C. App. 752, 758, 463 S.E.2d 830, 834 (1995) (citing *State v. Rose*, 327 N.C. 599, 605, 398 S.E.2d 314, 317 (1990)).

After reviewing the evidence, we conclude the trial court's finding amounted to harmless error beyond a reasonable doubt. It was uncontroverted that defendant fired a semi-automatic weapon during his altercation with Officer Ray. A semi-automatic pistol in its normal use is hazardous to the lives of more than one person. *State v. Antoine*, 117 N.C. App. 549, 551, 451 S.E.2d 368, 370 (1995). The evidence shows that defendant fired his weapon at the police officers and the police officers fired shots at the defendant while customers were inside the store. Some customers were in their cars when the shooting began and ran into the store for safety. Two customers testified they either hid in their cars or in the store to avoid the bullets. We conclude a rational fact-finder would find that a great risk of death was knowingly created to the lives of several people through defendant's actions.

Defendant argues the trial court erred in presuming the defendant was a reasonable person in order to find he knowingly created a great risk of death. Defendant contends evidence of his mental illness was unrebutted by the State and supports a conclusion that he did not act "knowingly." We disagree. Although defendant testified at the re-sentencing hearing that he did not know what happened that night, every person is presumed sane and the burden of proving insanity is on the defendant. *State v. Dorsey*, 135 N.C. App. 116, 118, 519 S.E.2d 71, 72 (1999). A diagnosis of mental illness is not conclusive on the issue of insanity. *State v. Leonard*, 296 N.C. 58, 65, 248 S.E.2d 853, 857 (1978). In this case, the jury considered the issue of whether defendant's actions were excused by the insanity defense and the jury did not find that defendant was insane. We conclude the trial court's finding of the aggravating factor was harmless beyond a reasonable doubt.

No error.

Chief Judge MARTIN concurs.

Judge GEER dissents in a separate opinion.

GEER, Judge, dissenting.

In this case, the trial court erred in failing to submit to a jury the following aggravating factor: "The defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person." N.C. Gen. Stat. § 15A-1340.16(d)(8) (2007). In *State v. Blackwell*, 361 N.C. 41, 49, 638 S.E.2d 452, 458 (2006) (quoting *Neder v. United States*, 527 U.S. 1, 9, 144 L. Ed. 2d 35, 47, 119 S. Ct. 1827, 1834 (1999)), *cert denied*, 550 U.S. 948, 167 L. Ed. 2d 1114, 127 S. Ct. 2281 (2007), our Supreme Court held that such *Blakely*[1] errors must be reviewed by the appellate courts to determine "whether the evidence against the defendant was so 'overwhelming' and 'uncontroverted' that any rational fact-finder would have found the disputed aggravating factor beyond a reasonable doubt." Based upon my review of the record, including the jury's verdict, I cannot conclude that the evidence was overwhelming or uncontroverted as to the aggravating factor, and I, therefore, respectfully dissent.

In *State v. Rose*, 327 N.C. 599, 605, 398 S.E.2d 314, 317 (1990) (emphasis added), our Supreme Court held that in order to find the aggravating factor at issue in this case, there are "two considerations: (1) whether the weapon in its normal use is hazardous to the lives of more than one person; and (2) whether a great risk of death was *knowingly* created." While *State v. Bruton*, 344 N.C. 381, 393, 474 S.E.2d 336, 345 (1996), seems to establish that a semiautomatic pistol "in its normal use is hazardous to the lives of more than one person," the issue still remains whether defendant knowingly created a great risk of death to more than one person. In order to establish that prong of the aggravating factor, the State would have to prove beyond a reasonable doubt that defendant (1) knowingly, (2) created a great risk of death, (3) to more than one person.

At the original trial and at the sentencing hearing, defendant presented evidence from four expert witnesses—two of whom were doctors from Dorothea Dix Hospital—regarding defendant's history of mental illness, including his discharge from the military with a 30% mental disability rating, his diagnosis as suffering from a psychotic disorder, his hospitalizations, and his psychotic symptoms. The evidence also indicated that defendant had ceased taking his medications—which included an antipsychotic drug, a mood stabilizer, and antidepressants—for the 10 months prior to the shooting. Each of the

---

1. *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004).

expert witnesses testified with respect to the 28 October 1999 shooting incident that defendant had suffered a psychotic episode that interfered with his ability to know the difference between right and wrong. The State did not present any contrary expert evidence either at the original trial or at the resentencing hearing.

Although defendant did not testify at the original trial, he testified at the resentencing hearing. He explained that he had unsuccessfully been trying to get an appointment at the VA hospital to adjust his medications, but the first appointment he could obtain was for 1 November 1999, three days after the shooting. Defendant testified that he told doctors in 1999 that he was trying to get the police to kill him. He explained that he knew there was a police substation at the convenience store and went there because he thought "if I'm shooting a round off in the air or something and trying to get, hopefully they'll take me out, because the pain, my mental anguish was so much I couldn't bear it no more."

In light of the extensive evidence presented regarding defendant's state of mind—the focus of the aggravating factor—certainly, we cannot say that the evidence of the aggravating factor was uncontroverted. Nor, given the State's lack of expert testimony supporting its position, can I agree that the evidence in support of the aggravating factor was overwhelming.

The majority opinion bases its conclusion that the evidence meets the *Blackwell* standard on an assumption that the jury's rejection of the insanity defense during the original trial necessarily establishes the second prong of the aggravating factor's test. This assumption is contrary to both the record and the law of this State.

It is apparent from the jury's actual verdict that it found defendant's evidence of his mental status persuasive even though it did not believe that defendant had met his burden of proving insanity. Although, with respect to the two officers actually struck by defendant's bullets, the jury found defendant guilty of the general intent crime of assault with a firearm upon a law enforcement officer, it found defendant *not guilty* of attempted first degree murder. *See State v. Coble*, 351 N.C. 448, 449, 527 S.E.2d 45, 46 (2000) ("Therefore, to commit the crime of attempted murder, one must specifically intend to commit murder."). Likewise, the jury declined to find defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury, but, instead, found him guilty of assault with a deadly weapon inflicting serious injury.

In short, the jury specifically concluded that the State had failed to prove defendant acted with an intent to kill even though defendant had shot one officer in the chest three times. I believe that the jury's verdict indicates that there is a reasonable possibility that it would also have found that defendant did not knowingly create a risk of death to more than one person. This possibility is even stronger when one considers that a sentencing jury would have the benefit of defendant's testimony that he was attempting, in effect, to commit suicide.

The jury's rejection of the insanity defense does not, as a legal matter, conclusively establish the existence of the aggravating factor. As our Supreme Court observed in *State v. Cooper*, 286 N.C. 549, 565, 213 S.E.2d 305, 316 (1975), *overruled in part on other grounds by State v. Leonard*, 300 N.C. 223, 226 S.E.2d 631 (1980), a defendant's mental capacity may be a "crucial factor" with respect to a number of issues in a criminal case, including insanity, but the "test of sufficient mental capacity" will vary depending on the specific issue. I have found no authority that suggests that a jury's finding that a defendant failed to prove to its satisfaction that he was insane necessarily resolves the question whether the State has met its burden of proving beyond a reasonable doubt that defendant knowingly created a risk of death to more than one person. The evolution of our State's law regarding diminished capacity suggests, however, that a jury's rejection of the insanity defense is not conclusive.

It is now established in North Carolina that a defendant may offer evidence of diminished mental capacity not only to prove insanity, but also to negate the ability to form a specific intent. *See, e.g., State v. Page*, 346 N.C. 689, 698, 488 S.E.2d 225, 231 (1997) ("A defendant is entitled to present evidence that a diminished mental capacity not amounting to legal insanity negated his ability to form the specific intent to kill required for a first-degree murder conviction on the basis of premeditation and deliberation."), *cert. denied*, 522 U.S. 1056, 139 L. Ed. 2d 651, 118 S. Ct. 710 (1998); *State v. Staten*, 172 N.C. App. 673, 685, 616 S.E.2d 650, 659 ("The defense of diminished capacity neither justifies nor excuses the commission of an offense, but rather negates only the element of specific intent, and the defendant could still be found guilty of a lesser included offense."), *appeal dismissed and disc. review denied*, 360 N.C. 180, 626 S.E.2d 838 (2005), *cert. denied*, 547 U.S. 1081, 164 L. Ed. 2d 537, 126 S. Ct. 1798 (2006); *State v. Williams*, 116 N.C. App. 225, 231, 447 S.E.2d 817, 821 (1994) ("The defense of diminished capacity applies to the element of specific

intent to kill which is an essential element of assault with a deadly weapon with intent to kill inflicting serious injury."), *appeal dismissed and disc. review denied,* 339 N.C. 741, 454 S.E.2d 661 (1995). If a jury may both reject an insanity defense and find that the State failed to prove specific intent because of a defendant's mental incapacity, I can see no reason why the same should not be true with respect to the aggravating factor in this case.

I do not believe that this Court's prior opinion in this case, *State v. Sellers,* 155 N.C. App. 51, 574 S.E.2d 101 (2002), holds otherwise. The prior panel simply concluded that "[w]here, as here, the jury has found defendant's evidence regarding insanity lacking, we find *there is sufficient evidence for a reasonable judge to find* that, despite the expert testimony to the contrary, defendant acted 'knowingly.' Therefore, the trial court did not err in finding this aggravating factor." *Id.* at 58, 574 S.E.2d at 106 (emphasis added). In other words, we previously held only that the evidence was sufficient to support a finding of the aggravating factor. Nothing in the opinion suggests that the rejection of the insanity defense mandated a finding of the aggravating factor. *See State v. Hurt,* 361 N.C. 325, 331, 643 S.E.2d 915, 919 (2007) (holding that although the evidence was such that "the jury *could have* found the [heinous, atrocious, and cruel] aggravator," it did not follow "that the jury necessarily *would have* found it beyond a reasonable doubt").

I believe *Hurt* controls. Although the evidence at trial meant that the original jury *could have* found defendant knowingly created a risk of death to more than one person, I cannot conclude beyond a reasonable doubt that the jury *would have* made this finding. Despite evidence that defendant shot one officer in the chest three times, the jury refused repeatedly to find that defendant acted with an intent to kill. How can this Court, without substituting its own view of the evidence, conclude beyond a reasonable doubt that a jury which did not believe defendant intended to kill would also find defendant knowingly created a risk of death to more than one person? Maybe the jury would have, but maybe it would not. I would, therefore, remand for a new sentencing hearing.