**Ira David MEEKS, Petitioner,**

**v.**

**J. Richard SMITH and the State of North Carolina, Respondents.**

**No. C–C–79–157.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

April 21, 1981.

Ira David Meeks, pro se.

Richard N. League, Sp. Deputy Atty. Gen., N. C. Dept. of Justice, Raleigh, N. C., for respondents.

## ORDER ALLOWING A WRIT OF HABEAS CORPUS

McMILLAN, District Judge.

Petitioner, a state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In an order filed February 6, 1981, the court dismissed all of petitioner's claims for habeas relief except two: (1) that his guilty plea was made involuntarily and without understanding of the nature of the charges and consequences of the plea and (2) that his court-appointed attorney did not provide him with effective assistance. In response to that order, petitioner and respondent have submitted additional information, based upon which the court now issues a writ of habeas corpus.

### I. Facts

In 1970, petitioner robbed a North Carolina taxi driver of about $12.00. Shortly after the robbery, petitioner went to the Gaston County airport and hired a pilot to take him on a flight around Gastonia. Once the plane was airborne, petitioner forced the pilot to fly to Cuba. After the plane reached Cuba, the pilot was returned to the United States by Cuban authorities. Petitioner, however, remained in Cuba for approximately six years. Petitioner says he spent much of that time incarcerated in jails and hospitals. He eventually returned to the United States in July, 1976.

Upon his return to the United States, petitioner was indicted by a federal grand jury in Charlotte, North Carolina, on federal charges of air piracy and kidnapping. Upon motion of petitioner's court-appointed attorney, he was sent to the Medical Center for Federal Prisoners in Springfield, Missouri, on September 16, 1976, for psychiatric evaluation. On September 30, 1976, the psychiatric staff at the medical center—which included eight doctors and four other specialists—found that petitioner was not competent to stand trial.

At a hearing in United States District Court for the Western District of North

Carolina on December 6, 1976, petitioner presented evidence of his psychiatric evaluation. Chief Judge Woodrow Wilson Jones then dismissed the federal charges.

After petitioner's federal charges were dismissed, the State of North Carolina charged petitioner with the kidnapping of the pilot and the armed robbery of the taxi driver. Documents submitted by the state show that in the following twelve months petitioner received at least seven psychiatric evaluations to determine his competency to stand trial.

On December 20, 1976, Dr. Harris Evans, a psychiatrist at the Gaston County Mental Health Clinic, found petitioner incompetent to stand trial and recommended that petitioner be involuntarily committed for an indefinite time to the Dorothea Dix Hospital in Raleigh, North Carolina.

On January 7, 1977, petitioner was admitted to Dorothea Dix Hospital, where he was examined by Dr. Billy Royal, a forensic psychiatrist. On this and subsequent examinations, Dr. Royal diagnosed petitioner as a paranoid schizophrenic. However, Dr. Royal found petitioner competent to stand trial on the date of his discharge, February 14, 1977, and competent at the time of committing the alleged crime.

On April 22, 1977, petitioner was again examined by Dr. Evans in Gastonia. Dr. Evans found petitioner incompetent to stand trial.

On May 6, 1977, petitioner was returned to Dorothea Dix Hospital. There he was again examined by Dr. Royal, who, in an evaluation dated July 15, 1977, changed his previous opinion and found that petitioner was incapable of working with his attorney in preparing his defense. Petitioner was returned to Gaston County, but later was returned to Dorothea Dix Hospital upon motion of his attorney.

On September 14, 1977, Dr. Royal again reversed himself and found that petitioner was probably competent to stand trial.

On October 27, 1977, Dr. Evans examined petitioner at the Gaston County clinic and concluded that petitioner was incompetent to stand trial. Dr. Evans stated: "He does seem to be so involved in this grandiose delusional thinking that I think he's very poorly prepared to participate in a meaningful way in his own defense." Upon motion of his attorney, petitioner was then returned to Dorothea Dix Hospital.

On December 19, 1977, petitioner was discharged from the hospital. On that date, Dr. James Groce, staff psychiatrist with the forensic unit, evaluated petitioner as competent to stand trial. Dr. Groce stated that petitioner was stabilized on medication and that he was able to cooperate with his attorney. Like Dr. Royal, he diagnosed petitioner as a paranoid schizophrenic, but he found that petitioner was then in remission.

At a hearing in Gaston County Superior Court on January 12, 1978, the state introduced the evaluation of Dr. Groce as evidence that petitioner was competent to stand trial. Petitioner's court-appointed attorney did not object to its admission and did not claim that petitioner was then incompetent to stand trial. Petitioner then accepted a plea bargain and pleaded guilty to kidnapping and common law robbery (reduced from the armed robbery charge). The court sentenced petitioner to eight to ten years' imprisonment for kidnapping, and it continued the prayer for judgment for five years on the common law robbery charge.

Petitioner applied to the Gaston County Superior Court on August 30, 1978, for postconviction review. Judge Robert Kirby dismissed the petition without hearing on March 20, 1979. The North Carolina Court of Appeals denied petitions for a writ of certiorari on December 28, 1978, and April 18, 1979. Petitioner has exhausted his state remedies for the claims in this action.

## II. *The Law*

Petitioner's psychiatric history raises serious doubts about whether he was competent to stand trial or to make a voluntary and understanding guilty plea. "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and ob-

ject of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975). In *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the United States Supreme Court held that failure to protect a defendant's right not to be tried or convicted while mentally incompetent deprives him of his due process right to a fair trial. *Id.* at 385, 86 S.Ct. at 842. Here there was substantial psychiatric evidence that petitioner, diagnosed as a paranoid schizophrenic suffering from delusions, was incapable of understanding the nature and object of the proceedings against him and unable to assist his counsel in preparation for trial.

■ Because of the doubts surrounding petitioner's competency on January 12, 1978, as evidenced by the conflicting psychiatric reports, petitioner was entitled to receive a hearing on the issue of his competency. "Where the evidence raises a '*bona fide* doubt' as to a defendant's competence to stand trial," *Pate v. Robinson, supra*, 383 U.S. at 385, 86 S.Ct. at 842, the court must conduct a thorough inquiry before it allows a defendant to be tried or to plead guilty. Here petitioner should have received a hearing before the court allowed him to plead guilty. *See United States v. Masthers*, 539 F.2d 721, 727 (D.C.Cir.1976) (federal prosecution).

■ North Carolina's General Statutes provide that the question of capacity of a criminal defendant to proceed may be raised at any time by the defendant, defense counsel, prosecutor, or the court. The court *may* order medical examination of the defendant or commitment of the defendant to a mental health facility for observation and treatment, but it "*[m]ust hold a hearing* to determine the defendant's capacity to proceed." N.C.G.S. § 15A–1002(b) (emphasis added). Petitioner's counsel sought and secured medical examinations and treatment for petitioner, but it does not appear from the record that a hearing, in compliance with the statute, was ever held. If the North Carolina statute had been fol-

lowed, petitioner would have been accorded his due process rights.

■ Petitioner's failure to assert his alleged incompetence at the January 12, 1978 hearing does not bar him from seeking collateral relief, for an incompetent cannot waive the right to be exempt from trial. *Pate v. Robinson, supra*, 383 U.S. at 384, 86 S.Ct. at 841. Nor can his attorney's failure to raise the issue be construed as waiver. *Kibert v. Peyton*, 383 F.2d 566, 568 (4th Cir. 1967). The *Kibert* case involved a Virginia statute which provided for hearing procedure on the issue of competency similar to North Carolina's. That court found: "The protection afforded the defendant by this legislation is illusory, however, if, *when a reasonable doubt as to his sanity arises*, neither court nor counsel seeks to utilize the procedures provided by the state for determining competency." *Id.* at 569 (emphasis added). The instant case is distinguishable, for petitioner's attorney did utilize state procedures by requesting repeated psychiatric evaluations of petitioner. But in light of conflicting psychiatric evaluations, counsel and the court had a duty carefully to scrutinize petitioner's competency to enter a guilty plea. By failing to conduct a hearing, they failed to afford petitioner the full protection of the law.

■ Similarly, petitioner's guilty plea does not bar him from obtaining collateral relief on the issue of competency to stand trial. "It is axiomatic that an accused must be competent to enter a valid guilty plea: 'A plea of guilty is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence.'" *United States v. Masthers, supra*, 539 F.2d at 725 (quoting from *Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927)). If petitioner was incompetent to stand trial, he was also incompetent to enter a voluntary, knowledgeable guilty plea.

■ Respondents have submitted an affidavit from petitioner's trial attorney. The attorney states that the reason he allowed

petitioner to plead guilty and did not pursue further the issue of petitioner's competency to stand trial was that petitioner wanted his case resolved, and this petitioner agreed to the plea bargain. Counsel's diligent efforts to have petitioner evaluated by psychiatrists and treated are commendable. It is curious, however, that throughout these proceedings counsel never moved to dismiss the charges against petitioner on the ground of incompetence. Counsel's failure to demand a hearing on the issue of petitioner's incompetence could amount to ineffective assistance of counsel, *Owsley v. Peyton*, 368 F.2d 1002, 1003 (4th Cir. 1966), but here it appears that counsel acted within a normal range of competence.

■ Because of the extensive court and psychiatric records before the court, it is not necessary to conduct an evidentiary hearing in this court. Those records, in summary, show that prior to his state proceeding, petitioner was determined by a federal district judge to be incompetent to stand trial on federal charges stemming from the same offenses after the psychiatric staff at a federal prison hospital found him incompetent. Dr. Evans evaluated petitioner on three occasions and each time found him incompetent to stand trial. The last of these evaluations occurred on October 27, 1977. Dr. Royal examined petitioner three times: on the first he found petitioner competent, on the second he found petitioner incompetent, and on the third he found petitioner probably competent to stand trial. Dr. Groce examined petitioner only once, albeit on the date closest to petitioner's January 12, 1978 hearing. On December 19, 1977, Dr. Groce found petitioner competent to stand trial.

This evidence casts serious doubt on the constitutionality of petitioner's guilty plea. Petitioner was and is entitled to the hearing provided by state and federal law on the merits of his claim that he is mentally incompetent to stand trial or to enter a guilty plea.

Although petitioner raised this claim in a motion for a post-conviction hearing in Gaston County Superior Court, that court did not consider it on the merits. Instead, Judge Robert W. Kirby ruled that petitioner's claim did not assert any of the grounds provided for in N.C.G.S. § 15A–1415. At no time has petitioner received a hearing on his competency to stand trial or on the validity of his guilty plea. Petitioner thus has not received "a full, fair, and adequate hearing in the State court proceeding . . . ." 28 U.S.C. § 2254(d)(6).

IT IS THEREFORE ORDERED that a writ of habeas corpus will issue. Petitioner's guilty pleas and sentences of January 12, 1978 are set aside. The state is free to retry petitioner within a reasonable time, provided that it affords him a full and fair hearing on the issue of his competency to stand trial. If petitioner is found incompetent, the state is to follow its procedures in N.C.G.S. § 15A–1003 for civil commitment proceedings.