STATE OF NORTH CAROLINA v. DERRICK JOVAN McRAE

No. COA99-637

(Filed 1 August 2000)

## 1. Criminal Law— competency to stand trial—failure to conduct hearing

The trial court's failure to conduct a competency hearing on its own motion pursuant to N.C.G.S. § 15A-1002 before defendant's second trial for first-degree murder, based on the numerous psychiatric evaluations of defendant conducted before trial raising a bona fide doubt as to defendant's competency at the time of his second trial, requires: (1) a remand for a hearing to determine defendant's competency at the time of his trial, rather than a new trial; and (2) if the trial court cannot make a retrospective determination of defendant's competency, defendant's conviction must be reversed and a new trial may be granted when defendant is competent to stand trial.

## 2. Criminal Law— competency to stand trial—involuntary medication

Although defendant contends his due process rights, right to confront witnesses, and right to assistance of counsel were violated in a first-degree murder case based on the fact that he was involuntarily medicated with antipsychotic drugs in an attempt to make him competent to stand trial, the only evidence indicating that defendant was involuntarily medicated is too speculative since it consists of a statement by a doctor that lacks details surrounding administration of the medication.

## 3. Witnesses— cross-examination—pending charges—no details

Although defendant contends the trial court erred in a first-degree murder case by denying defendant the opportunity to cross-examine a State's witness about the witness's pending charges for the murder in this case and for two concealed weapons charges, a review of the voir dire hearing reveals that the trial court only prohibited defendant from asking about details surrounding the two concealed weapons charges, and not about the charges themselves.

## 4. Witnesses— cross-examination—pending charges

Although defendant contends the trial court erred in a first-degree murder case by denying defendant the opportunity to

cross-examine a State's witness about any charges pending at the time the witness spoke with police about the crime in this case, defendant was allowed to inquire as to any pending charges and did so.

Appeal by defendant from judgment entered 14 May 1998 by Judge Sanford L. Steelman, Jr. in Richmond County Superior Court. Heard in the Court of Appeals 19 April 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Thomas G. Meacham, Jr., for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Anne M. Gomez, for defendant-appellant.*

LEWIS, Judge.

On 18 March 1996, defendant was indicted for first-degree murder in violation of N.C. Gen. Stat. § 14-17. Defendant was tried at the 27 April 1998 session of Richmond County Superior Court on the first-degree murder charge. A deadlocked jury resulted in a mistrial on 1 May 1998. At retrial on 14 May 1998, the jury returned a verdict of guilty. Defendant was sentenced to life imprisonment without parole.

At approximately 3 a.m. on 14 October 1995, the body of the victim, Jerry Rankin, was discovered on the back porch of Allen Davis's residence. Rankin had been shot in the head by a gun fired from six to twelve inches away. Defendant lived approximately 400 yards from where the victim's body was found. Edward Tender, defendant's cellmate in the Richmond County jail, testified defendant confessed to shooting Rankin. In addition, Thurman Nelson, a friend of defendant, testified that on 13 October 1995, Rankin purchased crack cocaine from defendant and paid him with fake money; defendant threatened to "get" the victim. (Tr. at 64.) Defendant later told Nelson that he shot Rankin.

Several of defendant's friends and members of his family testified that defendant attended a cookout on 13 October 1995, the night before Rankin's death. Defendant became so intoxicated at the cookout, they said, that defendant's brother, sister and a friend walked with him to his mother's house where he went to bed and did not leave until the following day. One witness testified he reported defendant's presence at the cookout to the police, but they took no

statement. Several of the witnesses testified they did not tell this story to police because they thought the police "didn't want to hear it." (Tr. at 224.)

Written documents show that before his first trial, defendant underwent six psychiatric evaluations at Dorothea Dix Hospital to determine his competency. Two forensic psychiatrists, Dr. Robert Rollins and Dr. Nicole Wolfe, conducted these evaluations on different occasions. In addition, the trial court held three separate hearings before defendant's first trial finding him incapable of standing trial. The last of these hearings was conducted on 27 April 1998, the day of defendant's first trial. After defendant's first trial, he underwent one more psychiatric evaluation; however, the trial court did not conduct another hearing on the issue of defendant's capacity to stand trial.

[1] Citing N.C. Gen. Stat. § 15A-1002, defendant first contends the trial court was required to conduct a hearing, on its own motion, before his second trial to determine his competency to stand trial. G.S. 15A-1002 provides that "[w]hen the capacity of the defendant to proceed is questioned, the court *shall* hold a hearing to determine the defendant's capacity to proceed" (emphasis added). Although defendant neither requested this hearing nor objected to the trial court's failure to provide a competency hearing, defendant argues G.S. 15A-1002 affords defendant a right to a competency hearing that cannot be waived. The State contends defendant's statutory right to a competency hearing can be waived by failure to request such a hearing or object to the court's failure to provide a competency hearing, citing *State v. Young*, 291 N.C. 562, 231 S.E.2d 577 (1977). Because we find the court's failure to conduct a competency hearing under the circumstances present in this case violated defendant's federal due process rights, we forego an analysis under this statutory provision.

There are certain circumstances which impose on the trial court a constitutional duty to conduct a hearing on its own motion on the issue of a defendant's capacity. "[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial." *Drope v. Missouri*, 420 U.S. 162, 171, 43 L. Ed. 2d 103, 113 (1975). Failure of the trial court to protect a defendant's right not to be tried or convicted while mentally incompetent deprives him of his due process right to a fair trial. *Pate v. Robinson*, 383 U.S. 375, 385, 15 L. Ed. 2d 815, 822 (1966). A conviction cannot stand where defendant lacks capacity to

defend himself. *Drope*, 420 U.S. at 183, 43 L. Ed. 2d at 120. Our Supreme Court has also held that " 'a trial court has a constitutional duty to institute, *sua sponte*, a competency hearing *if there is sub-stantial evidence before the court* indicating that the accused may be mentally incompetent.' " *Young*, 291 N.C. at 568, 231 S.E.2d at 581 (quoting *Crenshaw v. Wolff*, 504 F.2d 377 (8th Cir. 1974) (emphasis added)); *see also Pate*, 383 U.S. at 385, 15 L. Ed. 2d at 822 (stating a competency hearing is required if there is a bona fide doubt as to defendant's competency). "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant" to a bona fide doubt inquiry. *Drope*, 420 U.S. at 180, 43 L. Ed. 2d at 118.

The evidence produced at the 27 April 1998 competency hearing consisted of several written reports. In the first of these on 13 December 1996, Dr. Wolfe diagnosed defendant as schizophrenic and psychotic and found him incapable of standing trial. The same day, the trial court conducted a hearing on the issue of defendant's com-petency and also found defendant incompetent to stand trial.

On 7 April 1997, Dr. Rollins conducted an examination of defend-ant and found him competent to stand trial. Dr. Rollins's report noted his concerns for a risk of relapse if defendant failed to continue tak-ing his medication.

On 17 September 1997, defendant was examined by Dr. Wolfe, who found him incapable of standing trial. The written report found him lethargic and unresponsive, and reemphasized his diagnoses as psychotic and schizophrenic. The same day, the trial court conducted a hearing and entered an order also finding defendant incompetent to stand trial.

In an evaluation conducted on 11 February 1998, Dr. Wolfe found defendant incompetent to stand trial. Dr. Wolfe noted in his evalua-tion his concern for defendant's history of non-compliance in taking his medications. The next day, after a hearing, the trial court also entered an order finding defendant incompetent to stand trial.

On 6 April 1998, Dr. Wolfe evaluated defendant, finding him "cur-rently competent to stand trial," recommending that another compe-tency evaluation be conducted immediately preceding trial due to defendant's history of medication non-compliance.

On 27 April 1998, the suggested competency evaluation was con-ducted by Dr. Wolfe, who deemed him competent to stand trial for the

STATE v. McRAE

[139 N.C. App. 387 (2000)]

next three weeks. At this time, the trial court conducted a hearing in which the trial court also determined him competent to stand trial. Defendant's first trial commenced that same day.

Following the mistrial, defendant's second trial date was set for 11 May 1998. Before defendant's second trial, on 6 May 1998, Dr. Rollins evaluated defendant and found·him competent to stand trial. In his report, Dr. Rollins ordered that defendant continue to take his medication. While the trial court had access to Dr. Rollins's 11 May 1998 written report, defendant made no pre-trial motion to determine his capacity to proceed to trial and the trial court did not conduct a post-evaluation competency hearing before his second trial. Defendant did not object to the trial court's failure to hold such a hearing.

In our opinion, the numerous psychiatric evaluations of defendant's competency that were conducted before trial with various findings and expressions of concern about the temporal nature of defendant's competency raised a bona fide doubt as to defendant's competency at the time of his second trial. *See, e.g., Meeks v. Smith,* 512 F. Supp. 335, 338 (W.D.N.C. 1981) (defendant diagnosed as schizophrenic underwent seven psychiatric evaluations yielding different conclusions as to competency raised bona fide doubt as to his competence to stand trial). Accordingly, he was entitled to receive a hearing on the issue of his competency whereby the court was required to conduct a thorough inquiry before it allowed the defendant to be tried or plead guilty. *Pate,* 383 U.S. at 385, 15 L. Ed. 2d at 822. Furthermore, defendant's failure to request a hearing or object to the court's failure to issue a hearing before his second trial does not bar him from seeking relief on appeal. *Id.* at 384, 15 L. Ed. 2d at 821; *Meeks,* 512 F. Supp. at 338. By failing to conduct a hearing with appropriate findings and conclusions, this defendant was not afforded due process.

Having determined that the trial court erred in not conducting a competency hearing, we consider the appropriate remedy. North Carolina courts have never addressed this issue; however, a federal court within our circuit has, in at least one instance, ordered a new trial upon the trial court's failure to conduct a competency hearing. *Meeks,* 512 F. Supp. at 339 (trial court never conducted a hearing before the defendant was tried). Given that defendant here was afforded several hearings before trial, and each time the trial court followed the determination made in the corresponding psychiatric evaluation, we remand for a hearing to determine the defendant's competency at the time of his trial, rather than remand for a new trial.

*See, e.g., United States v. Haywood,* 155 F.3d 674, 681 (3d Cir. 1998); *People v. Ponder,* 225 N.W.2d 168, 170 (Mich. Ct. App. 1975). Such a determination may be conducted, however, only if a meaningful hearing on the issue of the competency of the defendant at the prior proceedings is still possible. The trial court is in the best position to determine whether it can make such a retrospective determination of defendant's competency. Thus, if the trial court concludes that a retrospective determination is still possible, a competency hearing will be held, and if the conclusion is that the defendant was competent, no new trial will be required. If the trial court determines that a meaningful hearing is no longer possible, defendant's conviction must be reversed and a new trial may be granted when he is competent to stand trial.

**[2]** In his next assignment, defendant contends he was involuntarily medicated with antipsychotic drugs in an attempt to make him competent to stand trial, violating his due process rights, his right to confront witnesses and his right to assistance of counsel. The only evidence in the record indicating that defendant was, in fact, involuntarily medicated consists of a statement made by Dr. Wolfe at defendant's competency hearing before the trial court on 27 April 1997. Dr. Wolfe testified that defendant had been treated with several medications, "some of [which] were involuntarily-administered medications that he did not want to take because he does not believe he has a mental illness." (Comp. Hearing Tr. at 8.) Defendant has presented no other evidence regarding his purported involuntary medication. Any legal analysis as to this issue necessarily involves an analysis of whether defendant's constitutionally protected rights at trial were impaired by taking the medication, including effects on his outward appearance, his ability to follow proceedings and the substance of his communication with counsel. *Riggins v. Nevada,* 504 U.S. 127, 136-37, 118 L. Ed. 2d 479, 490-91 (1992). Because Dr. Wolfe's statement lacks details surrounding administration of the medication, we find the evidence on this issue too speculative. Accordingly, we conclude this argument is without merit.

**[3]** Defendant also contends the trial court erred by sustaining one of the State's objections during defendant's cross-examination of Nelson, a witness for the State, denying defendant his right to effective cross-examination. Specifically, defendant contends he should have been permitted to cross-examine Nelson regarding charges pending against him at the time of his testimony in order to establish potential bias, specifically, whether the State may have been holding

any such charges in abeyance pending Nelson's testimony in this case.

A defendant has the right to cross-examine about a witness with respect to charges pending at the time of his or her testimony or cooperation with police in order to establish potential bias. *State v. Evans*, 40 N.C. App. 623, 624, 253 S.E.2d 333, 334 (1979). The trial court in this case properly allowed defendant to ask Nelson on cross-examination whether he had been charged with first-degree murder in this case. Defendant contends, however, the trial court improperly prohibited his asking Nelson about pending charges of carrying a concealed weapon in August 1996 and March 1997.

At the time of trial, Nelson was out on bond for the murder in this case and on the two concealed weapons charges. During cross-examination of Nelson, defense counsel asked about the two concealed weapons charges, specifically, "[W]hat have you been charged with since being released on bond?" (Tr. at 78.) After sustaining the State's objection to this question, the court conducted a *voir dire* hearing out of the jury's presence. During the hearing, defense counsel not only asked Nelson about the two concealed weapons charges, but also asked about the *type* of weapon and bullet used in that weapon— whether a 9-mm can shoot a .380 bullet—the type used in the shooting in this case. Objecting to questions surrounding the substance of the charges, the State argued, "We have no objection to Your Honor allowing him to ask Mr. Nelson if he had any deal in any other pending charges that he has and let him answer that in front of the jury. I've got no objection to that. That's permissible under the case law. My objection is going into any details about the substance of the nature of the offense." (Tr. at 85.) After hearing both sides on the issue, the trial court stated, "All right. Is there any confusion as to the court's ruling? The only thing I have excluded are any questions about these subsequent charges." (Tr. at 86.) Neither party expressed confusion and the trial continued. Defendant did not ask Nelson any more questions about these two weapons charges.

Because the State objected to questions regarding the *substance* of the charges and not to questions about the charges themselves, it appears the trial court did not exclude defendant from asking about Nelson's pending charges, but only prohibited him from asking about *details* surrounding those charges. Defendant, on his own accord, chose not to ask about the charges themselves after the hearing. We find no error here.

**[4]** Defendant also contends the State improperly denied defendant the right to cross-examination the State's witness, Edward Tender, about any charges pending at the time he spoke with police about the crime here. Our review indicates, however, that defendant was allowed to inquire as to any pending charges and did so. Accordingly, we find no error.

We have reviewed defendant's remaining argument and find it to be without merit.

In sum, we remand this case for a hearing to determine the defendant's competency at the time of trial, pursuant to G.S. 15A-1002. If the trial court determines that a retrospective determination is still possible, the court should review the evidence which was before it preceding defendant's second trial, to wit, any psychiatric evaluations and presentations by counsel. If the trial court concludes from this retrospective hearing that defendant was competent at the time of trial, no new trial is required. If, however, the trial court determines that a meaningful hearing is no longer possible, defendant's conviction must be reversed and a new trial granted when he is competent to stand trial.

Remanded.

Judges JOHN and EDMUNDS concur.