IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-932

 Filed: 6 August 2019

Watauga County, Nos. 13 CRS 2118-2121

STATE OF NORTH CAROLINA

 v.

JACK HOWARD HOLLARS

 Appeal by Defendant from Judgments entered 12 January 2018 by Judge

William H. Coward in Watauga County Superior Court. Heard in the Court of

Appeals 28 March 2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General
 Josephine N. Tetteh, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Anne M.
 Gomez, for defendant-appellant.

 HAMPSON, Judge.

 Factual and Procedural Background

 Jack Howard Hollars (Defendant) appeals from his convictions for three counts

of Indecent Liberties with a Child and three counts of Second-Degree Sexual Offense.

The Record and evidence presented at trial tend to show the following:

 Defendant was arrested in connection with this case on 10 February 2012. On

3 September 2013, Defendant was indicted by a Watauga County Grand Jury for one

count of Statutory Sexual Offense of a Person Who Is Under 13 Years of Age, three
 STATE V. HOLLARS

 Opinion of the Court

counts of Statutory Sexual Offense of a Person Who Is 13–15 Years of Age, and four

counts of Indecent Liberties with a Child. Subsequently, on 4 May 2015, superseding

indictments were entered on these offenses, charging Defendant with three counts of

Indecent Liberties with a Child and three counts of Second-Degree Sexual Offense.

These indictments stemmed from incidents that occurred between 1977 and 1981.

 Although Defendant initially waived his right to court-appointed counsel, on

23 April 2012, the trial court in its discretion decided to provide Defendant with court-

appointed counsel because Defendant “was not responsive to [the] Court’s questions”

during his initial appearance. On 4 May 2012, Defendant’s counsel filed a motion to

have Defendant evaluated because of Defendant’s behavior on 1 May 2012. On that

date, Defendant’s counsel met with Defendant at the Watauga County Jail for

approximately one hour. During this visit, “Defendant’s thought process [was]

scattered and random[,] and he [was] unable to focus.” Defendant claimed to have no

memory of the events leading to his current charges because “God closed the door and

I cannot see.” Further, Defendant stated that he would not take any medication

because “chemicals in the water at Parris Island in 1968 when he was in the Marine

Corps ‘messed up [his] brain.’ ”

 On 7 May 2012, Defendant underwent a forensic evaluation by Daymark

Recovery Services, which rendered a report on Defendant’s capacity to proceed to trial

two days later (Daymark Report). The Daymark Report noted some of the same

 -2-
 STATE V. HOLLARS

 Opinion of the Court

concerns that Defendant’s counsel had expressed previously about Defendant’s

behavior, such as “religious concerns and ideas to an extent that suggested a

dysfunctional preoccupation”; Defendant’s unwillingness to discuss the nature of the

charges that he was facing; and Defendant’s aversion to taking his medications. The

Daymark Report concluded by stating:

 It is the opinion of the Certified Forensic Evaluator that
 [Defendant] is not competent to stand trial, and is impaired in
 providing the expected ability to assist in his defense.
 [Defendant] showed limited ability to cooperate in even basic
 discussion of his case with the undersigned despite a history of
 cooperative interaction over many years. [Defendant] appears
 psychotic and delusional, and in need of medication and
 treatment to relieve his condition. It seems likely, given
 [Defendant’s] history, that a reestablishment of his psychotropic
 medication regimen would reestablish his capacity to proceed to
 trial. However, it also appears unlikely that he will allow this
 voluntarily in his current state of mind.

The Daymark Report also recommended further assessment and inpatient treatment

of Defendant.

 Based on the Daymark Report, the trial court entered an order committing

Defendant to Central Regional Hospital for an examination on his capacity to

proceed. On 25 July 2012, Dr. David Bartholomew (Dr. Bartholomew) of Central

Regional Hospital evaluated Defendant and found him incapable to proceed in a

written report dated 9 August 2012 (First Dr. Bartholomew Report). Dr.

Bartholomew based his Report on, inter alia, Defendant’s prior medical records, the

Daymark Report, and a 75-minute in-person evaluation of Defendant. The First Dr.

 -3-
 STATE V. HOLLARS

 Opinion of the Court

Bartholomew Report contained many of the same concerns as the Daymark Report

and concluded that:

 [Defendant] has a history of significant mental health
 problems including psychosis and depression. He is currently not
 receiving any treatment for his conditions. He is quite impaired
 at the present time as a result of symptoms of his mental illness.
 He is unable to describe a reasonable understanding of the nature
 and objects of the proceedings against him. He is not rational
 about his place in regards to the proceedings. He is unable to
 assist his attorney in a reasonable manner. [Defendant] is not
 capable to proceed.

This Report also noted Defendant “may gain capacity if he receives mental health

treatment.”

 Based on the First Dr. Bartholomew Report, the trial court entered an order

on 18 September 2012, finding Defendant incapable to proceed and involuntarily

committing Defendant to Broughton Hospital. Defendant would remain at

Broughton Hospital until, and throughout, his trial in January of 2018. During this

time period, Defendant would undergo several other forensic evaluations with

differing results.

 On 14 May 2013, Dr. Bartholomew entered another report, based on a forensic

evaluation from the previous month, finding Defendant competent to stand trial

(Second Dr. Bartholomew Report). This Second Dr. Bartholomew Report found that

Defendant’s “mental health condition has improved with medication” but

recommended continued psychiatric treatment of Defendant.

 -4-
 STATE V. HOLLARS

 Opinion of the Court

 On 31 March 2015, Dr. Bartholomew conducted a third forensic evaluation of

Defendant and entered a written report on 14 April 2015 (Third Dr. Bartholomew

Report). Although this Report concluded Defendant was capable to proceed, Dr.

Bartholomew noted that Defendant “has a longstanding mental illness which has

been labeled as schizophrenia, schizoaffective disorder, or bipolar disorder by various

clinicians.” The Report further recommended that:

 Given his dementia, [Defendant] may not function well at the
 jail and may likely decompensate again if housed overnight in the
 jail. If [Defendant’s] future court visits will take more than one
 day, I would recommend that, if possible, he stay at Broughton
 Hospital each night and be transported to court each morning or
 day. It is also possible his condition may deteriorate with the
 stress of a trial so vigilance is suggested if his case proceeds in a
 trial.

 On 5 May 2015, the trial court held a competency hearing where Dr.

Bartholomew testified that in his opinion Defendant was competent. However, the

trial court had reservations regarding Defendant’s capacity and ordered Defendant

to undergo an additional psychiatric evaluation before determining Defendant’s

capacity to stand trial. On 23 July 2015, the trial court appointed Dr. James E.

Bellard (Dr. Bellard) to conduct this evaluation.

 On 9 October 2015, Dr. Bellard held a forensic interview with Defendant;

thereafter, Dr. Bellard found Defendant incompetent to proceed and reduced his

findings to a written report on 4 November 2015 (Dr. Bellard Report). The Dr. Bellard

Report found Defendant suffered from hallucinations and diagnosed him with

 -5-
 STATE V. HOLLARS

 Opinion of the Court

schizophrenia and mild neurocognitive disorder. In the Report, Dr. Bellard expressed

that “[he] simply cannot see [Defendant] as competent to stand trial” and that if

Defendant proceeded to trial, he “would have difficulty refraining from irrational or

unmanageable behavior during a trial.”

 On 7 March 2016, the trial court entered an Order on Defendant’s Incapacity

to Proceed (Incapacity Order) finding Defendant “lacks capacity to proceed.” In the

Incapacity Order, the trial court found that “Defendant suffers from Schizophrenia

and experiences auditory hallucinations . . . on a regular basis.” The trial court also

found Defendant had a mild neurocognitive disorder that “impacts his daily life and

competency[.]” Lastly, the trial court noted—“Defendant’s difficulty maintaining

mental stability upon transfer to the jail suggests that he would have difficulty

tolerating stress at a trial or while awaiting trial, and he would have difficulty

refraining from irrational or unmanageable behavior during a trial.”

 On 8 December 2016, Dr. Bartholomew conducted another forensic evaluation

of Defendant and found he was capable to proceed, based on Defendant’s progress

with his treatment and continued medication. On 15 August 2017, Dr. Bartholomew

and Dr. Reem Utterback (Dr. Utterback) examined Defendant and found him

competent in a report dated 24 August 2017 (Final Dr. Bartholomew Report). This

Report concluded that “it is reasonable to assume [Defendant] will maintain this

[level of] functioning in the foreseeable future and during a trial.”

 -6-
 STATE V. HOLLARS

 Opinion of the Court

 Thereafter, the trial court held a competency hearing on 5 September 2017,

finding Defendant competent to stand trial. On 2 January 2018, Defendant filed a

Motion to Dismiss citing the delay in prosecuting his case. Defendant contended

there was “no physical evidence whatsoever that any crime ever occurred[.]”

Defendant further noted his “Capacity to Proceed has been in question since his

initial arrest in 2012” and various treatment attempts and psychological issues

“account for almost all the delay between Defendant’s initial arrest in 2012 and the

present.” Defendant conceded the delay was “not the fault of the State” but contended

the passage of time, in terms of both witness recollection and Defendant’s progressing

psychological issues, “has worked to substantially prejudice Defendant.” That same

day, Defendant also filed a Motion to Quash Indictments and a second Motion to

Dismiss, citing double jeopardy and other constitutional concerns. On 5 January

2018, Defendant filed a Supplement to his Motion to Dismiss alleging additional

details regarding his mental health.

 On 8 January 2018, the matter proceeded to trial, and the trial court did not

hold another competency hearing before commencing this trial. After the State’s first

witness had finished her testimony on 10 January 2018, Defendant’s counsel brought

to the trial court’s attention his concerns regarding Defendant’s competency.

Specifically, Defendant’s counsel stated:

 Your Honor, . . . I just had a brief conversation with [Defendant]
 during which I began to have some concerns about his capacity

 -7-
 STATE V. HOLLARS

 Opinion of the Court

 and I would ask the Court to address him regarding that. . . . I’ve
 been asking him how he’s doing and if he knows what’s going on.
 And up until just now he’s been able to tell me what’s been going
 on. He just told me just a few minutes ago that he didn’t know
 what was going on. . . . I asked him if he understood what was
 going on. He said, no, he didn’t know what [the witness] was
 talking about. And that has not been the way he has been
 responding throughout this event, either yesterday or earlier
 today. And in light of the history with him, I just want to make
 sure. . . . I feel we need to make sure. And I’m not asking for an
 evaluation[.] I would just ask for the Court to query him quickly
 to make sure . . . I’m seeing something that is not there.

 The trial court suggested Defendant’s lack of understanding was likely

attributable to earlier discussions of Rules 403 and 404(b) of the North Carolina Rules

of Evidence, not Defendant’s mental state. Thereafter, the trial court stated it would

address this issue the following morning. The next morning, the ensuing exchange

between the trial court and Defendant’s counsel occurred:

 THE COURT: Do you have any more information or arguments
 you want to make as to [Defendant’s] capacity this morning?

 [DEFENSE COUNSEL]: No, Your Honor. When [Defendant]
 came in this morning he greeted me like he has other mornings.
 I interacted with him briefly and he interacted like he has been
 interacting every morning. And I’ve not had any questions about
 his capacity this morning. I just had some yesterday evening
 because he kind of looked at me and the look in his face was like
 he had no idea who I was.

 THE COURT: Yeah, well, any time you get to -- like I said, any
 time you get to talking about 404(b) and 403 everybody in the
 courtroom is going to look like that but.

 [DEFENSE COUNSEL]: I don’t have any concerns this morning.

 -8-
 STATE V. HOLLARS

 Opinion of the Court

 THE COURT: Okay.

 Neither the trial court nor Defendant’s counsel raised the issue of Defendant’s

competency again at trial. On 12 January 2018, the jury returned verdicts finding

Defendant guilty on all charges. The trial court entered separate Judgments on each

of the charges against Defendant, sentencing Defendant to ten years on each charge

of Indecent Liberties with a Child and 40 years on each charge of Second-Degree

Sexual Offense to run consecutively in the custody of the North Carolina Department

of Adult Correction. Additionally, the trial court entered Judicial Findings and Order

for Sex Offenders on each charge. Defendant appeals.

 Issue

 The dispositive issue in this case is whether the trial court violated Defendant’s

due-process rights by failing to conduct a competency hearing immediately prior to

or during Defendant’s trial.

 Analysis

 I. Standard of Review

 “[T]he conviction of an accused person while he is legally incompetent violates

due process[.]” State v. Taylor, 298 N.C. 405, 410, 259 S.E.2d 502, 505 (1979)

(citations omitted). “The standard of review for alleged violations of constitutional

rights is de novo.” State v. Graham, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444

(2009) (citation omitted).

 -9-
 STATE V. HOLLARS

 Opinion of the Court

 II. Lack of Competency Hearing

 “It has long been accepted that a person whose mental condition is such that

he lacks the capacity to understand the nature and object of the proceedings against

him, to consult with counsel, and to assist in preparing his defense may not be

subjected to a trial.” Drope v. Missouri, 420 U.S. 162, 171, 43 L. Ed. 2d 103, 112-13

(1975). Our North Carolina Supreme Court has held

 under the Due Process Clause of the United States Constitution,
 a criminal defendant may not be tried unless he is competent. As
 a result, a trial court has a constitutional duty to institute, sua
 sponte, [a] competency hearing if there is substantial evidence
 before the court indicating that the accused may be mentally
 incompetent. In enforcing this constitutional right, the standard
 for competence to stand trial is whether the defendant has
 sufficient present ability to consult with his lawyer with a
 reasonable degree of rational understanding and has a rational
 as well as factual understanding of the proceedings against him.

State v. Badgett, 361 N.C. 234, 259, 644 S.E.2d 206, 221 (2007) (alteration in original)

(citations and quotation marks omitted). In addition, “a trial judge is required to hold

a competency hearing when there is a bona fide doubt as to the defendant’s

competency even absent a request.” State v. Staten, 172 N.C. App. 673, 678, 616

S.E.2d 650, 654-55 (2005) (citation omitted). “[E]vidence of a defendant’s irrational

behavior, his demeanor at trial, and any prior medical opinion on competence to stand

trial are all relevant to a bona fide doubt inquiry.” State v. McRae, 139 N.C. App.

387, 390, 533 S.E.2d 557, 559 (2000) (alteration in original) (emphasis added)

(citation and quotation marks omitted).

 - 10 -
 STATE V. HOLLARS

 Opinion of the Court

 Defendant contends the trial court erred by failing to conduct sua sponte a

competency hearing either immediately before or during the trial because substantial

evidence existed before the trial court that indicated Defendant may have been

incompetent. We agree with Defendant and believe McRae controls our analysis.

 In McRae, the defendant suffered from schizophrenia and psychosis and had

undergone at least six psychiatric evaluations over a seventeen-month period leading

up to his first trial, which evaluations had differing results regarding the defendant’s

competency. Id. at 390-91, 533 S.E.2d at 559-60. Immediately following a

competency hearing finding him competent, the defendant went to trial; however,

this trial resulted in a mistrial. Id. at 391, 533 S.E.2d at 560. Thereafter, Defendant

underwent an additional evaluation finding him competent, and five days later, the

defendant’s second trial began. Id. Noting “concern[s] about the temporal nature of

[the] defendant’s competency[,]” this Court held that the trial court erred in failing to

conduct a competency hearing immediately prior to the second trial. Id. (citation

omitted); see also Meeks v. Smith, 512 F. Supp. 335, 338-39 (W.D.N.C. 1981) (finding

a bona fide doubt existed as to the defendant’s competency where defendant was

diagnosed as schizophrenic and underwent seven psychiatric evaluations yielding

different conclusions as to defendant’s competency).

 Here, the trial court was presented with substantial evidence raising a bona

fide doubt as to Defendant’s competency to stand trial in January of 2018. First, on

 - 11 -
 STATE V. HOLLARS

 Opinion of the Court

8 January 2018, the trial court had access to Defendant’s seven prior forensic

evaluations. These evaluations found Defendant was psychotic at times, suffered

from hallucinations, and had been diagnosed with schizophrenia, schizoaffective

disorder, bipolar disorder, and mild neurocognitive disorder. Several of these

evaluations also noted a temporal aspect to Defendant’s mental ability to stand trial.

For instance, the Third Dr. Bartholomew Report noted, “It is also possible his

condition may deteriorate with the stress of a trial so vigilance is suggested if his case

proceeds in a trial.” Dr. Bellard expressed similar concerns in his report as well. Our

Court has recognized that “[e]vidence of . . . any prior medical opinion on competence

to stand trial [is] relevant to a bona fide doubt inquiry.” McRae, 139 N.C. App. at

390, 533 S.E.2d at 559 (citation and quotation marks omitted).

 In addition, Defendant’s last forensic evaluation was conducted on 15 August

2017 and reduced to writing on 24 August 2017—the Final Dr. Bartholomew Report.

Based on this Report, the trial court conducted a competency hearing and determined

Defendant to be competent to stand trial on 5 September 2017. However, Defendant’s

trial did not begin until 8 January 2018, a full five months after Defendant’s

competency hearing and almost six months after Defendant’s last forensic evaluation.

Given the temporal nature of Defendant’s mental illness, the appropriate time to

conduct a competency hearing was immediately prior to trial. See id. at 391, 533

S.E.2d at 560; Meeks, 512 F. Supp. at 338-39; see also State v. Cooper, 286 N.C. 549,

 - 12 -
 STATE V. HOLLARS

 Opinion of the Court

565, 213 S.E.2d 305, 316 (1975) (stating a defendant’s competency must be assessed

“at the time of trial” (citations omitted)).

 In a similar vein, we find it significant that Defendant’s prior medical records

disclosed numerous concerns about the potential for Defendant’s mental stability to

drastically deteriorate over a brief period of time and with the stress of trial. Dr.

Bartholomew correctly indicated that “vigilance is suggested if [Defendant’s] case

proceeds in a trial[,]” as “a defendant’s competency to stand trial is not necessarily

static, but can change over even brief periods of time.” State v. Whitted, 209 N.C.

App. 522, 528-29, 705 S.E.2d 787, 792 (2011) (citation omitted). Because these

forensic evaluations suggested a “temporal nature of [Defendant’s] competency[,]” the

trial court should have conducted a competency hearing. See McRae, 139 N.C. App.

at 391, 533 S.E.2d at 560 (citation omitted). Therefore, we conclude the trial court

committed prejudicial error in failing to hold a competency hearing.

 Further, we find additional support for this conclusion based on the events at

trial. For instance, Defendant’s counsel questioned Defendant’s capacity on the third

day of trial. Specifically, defense counsel stated, “I just had a brief conversation with

[Defendant] during which I began to have some concerns about his capacity and I

would ask the Court to address him regarding that.” Defense counsel’s concerns

stemmed from Defendant’s responses that he “didn’t know what was going on” and

“didn’t know what [the witness] was talking about.” These concerns were raised

 - 13 -
 STATE V. HOLLARS

 Opinion of the Court

before the trial court, although a competency hearing was not held at this time.1

However, our Court has observed that a defendant’s demeanor is also relevant to a

bona fide-doubt inquiry. See id. at 390, 533 S.E.2d at 559 (citation and quotation

marks omitted). Moreover, Defendant never had an extended colloquy with the trial

court or testified in a manner that demonstrated he was competent to stand trial. Cf.

Staten, 172 N.C. App. at 679-84, 616 S.E.2d at 655-58 (holding that there was not

substantial evidence of defendant’s incompetence where defendant engaged in a

lengthy voluntariness colloquy with the trial court; defendant’s responses were “lucid

and responsive”; and his testimony was mostly rational).

 In light of Defendant’s extensive history of mental illness, including

schizophrenia, schizoaffective disorder, bipolar disorder, and mild neurocognitive

disorder, his seven prior forensic evaluations with divergent findings on his

competency, the five-month gap between his competency hearing and his trial, the

concerns expressed by physicians and other trial judges about the potential for

Defendant to deteriorate during trial and warning of the need for vigilance, the

concerns his counsel raised to the trial court regarding his conduct and demeanor on

the third day of trial, and the fact that the trial court never had an extended colloquy

 1 Although by the next morning Defendant’s counsel indicated that he no longer had any
concerns and the trial court proceeded with the trial, in our view, under the totality of the
circumstances—including Defendant’s extensive medical history and the gap between Defendant’s last
competency hearing and trial—there was substantial evidence giving rise to a bona fide doubt
regarding Defendant’s competency, notwithstanding defense counsel’s failure to further pursue a
competency hearing during trial.

 - 14 -
 STATE V. HOLLARS

 Opinion of the Court

with Defendant, we conclude substantial evidence existed before the trial court that

raised a bona fide doubt as to Defendant’s competency to stand trial. Therefore, the

trial court erred in failing to institute sua sponte a competency hearing for Defendant.

 III. Remedy

 Because we have found that the trial court erred by failing to hold a

competency hearing immediately prior to or during Defendant’s trial, we follow the

procedure employed in McRae and remand to the trial court for a determination of

whether a meaningful retrospective hearing can be conducted on the issue of

Defendant’s competency at the time of his trial. See McRae, 139 N.C. App. at 392,

533 S.E.2d at 560-61 (“The trial court is in the best position to determine whether it

can make such a retrospective determination of [a] defendant’s competency.”). On

remand,

 if the trial court concludes that a retrospective determination is
 still possible, a competency hearing will be held, and if the
 conclusion is that the defendant was competent, no new trial will
 be required. If the trial court determines that a meaningful
 hearing is no longer possible, defendant’s conviction must be
 reversed and a new trial may be granted when he is competent to
 stand trial.

Id. at 392, 533 S.E.2d at 561. In reaching its decision, the trial court must determine

if a retrospective determination is still possible as it relates to (1) Defendant’s

competency immediately prior to trial, (2a) Defendant’s competency during trial, and

(2b) specifically Defendant’s competency during the proceedings on the afternoon of

 - 15 -
 STATE V. HOLLARS

 Opinion of the Court

10 January 2018 when Defendant’s trial counsel raised concerns over Defendant’s

mental state. If the trial court decides a retrospective determination is possible, the

trial court must make detailed findings of fact and conclusions of law in a written

order. Because it is possible on remand that the trial court concludes Defendant was

not competent and orders a new trial, which would moot Defendant’s arguments in

his Conditional Motion for Appropriate Relief, we dismiss Defendant’s Conditional

Motion for Appropriate Relief without prejudice.

 Conclusion

 For the foregoing reasons, we remand this case to the trial court for a hearing

to determine Defendant’s competency at the time of trial. Further, we dismiss

Defendant’s Conditional Motion for Appropriate Relief without prejudice.

 REMANDED.

 Judge MURPHY concurs.

 Judge BERGER dissents in a separate opinion.

 - 16 -
 No. COA18-932 – State v. Hollars

 BERGER, Judge, dissenting in separate opinion.

 There was no bona fide doubt as to Defendant’s competence to stand trial, and

there was not substantial evidence before the trial court that Defendant was

incompetent. Thus, the trial court did not err when it began Defendant’s trial, and

proceeded with the trial, without undertaking another competency hearing, and I

respectfully dissent.

 A defendant lacks capacity to proceed when “he is unable to understand the

nature and object of the proceedings against him, to comprehend his own situation in

reference to the proceedings, or to assist in his defense in a rational or reasonable

manner.” State v. King, 353 N.C. 457, 465-66, 546 S.E.2d 575, 584 (2001) (citation

omitted), cert. denied, 534 U.S. 1147 (2002). “[A] conviction cannot stand where the

defendant lacks capacity to defend himself.” Id. at 467, 546 S.E.2d at 585 (citation

omitted).

 “[A] trial judge is required to hold a competency hearing when there is a bona

fide doubt as to the defendant's competency . . . .” State v. Staten, 172 N.C. App. 673,

678, 616 S.E.2d 650, 654 (2005). “Evidence of a defendant's irrational behavior, his

demeanor at trial, and any prior medical opinion on competence to stand trial are all

relevant to a bona fide doubt inquiry.” Id. at 678, 616 S.E.2d at 655. “[A] trial court

has a constitutional duty to institute, sua sponte, a competency hearing if there is
 STATE V. HOLLARS

 BERGER, J., dissenting

substantial evidence before the court indicating that the accused may be mentally

incompetent.” Id. at 681, 616 S.E.2d at 656.

 “There are, of course, no fixed or immutable signs which invariably indicate

the need for further inquiry to determine fitness to proceed; the question is often a

difficult one in which a wide range of manifestations and subtle nuances are

implicated.” Id. at 679, 616 S.E.2d at 655 (citations omitted). There must be

“evidence before the trial court that defendant was not capable of assisting in his own

defense,” State v. Blancher, 170 N.C. App. 171, 174, 611 S.E.2d 445, 447 (2005), or

otherwise lacked capacity to proceed.

 There is no evidence in the record of irrational behavior or change in demeanor

by Defendant at trial. The majority rests its reasoning almost entirely on Defendant’s

prior competency evaluations. While relevant, this factor alone is not controlling.

 Defendant underwent multiple competency evaluations prior to trial. The

dates of those evaluations, doctors, and results are set forth below:

 May 7, 2012 Dr. Murray Hawkinson Not Competent2
 July 25, 2012 Dr. David Bartholomew Not Competent
 April 30, 2013 Dr. David Bartholomew Competent
 March 31, 2015 Dr. David Bartholomew Competent
 October 9, 2015 Dr. James Bellard Not Competent
 December 8, 2016 Dr. David Bartholomew Competent
 August 15, 2017 Dr. David Bartholomew Competent
 Dr. Reem Utterback

 2 Dr. Hawkinson conducted a forensic screening at the Watauga County Jail.

 2
 STATE V. HOLLARS

 BERGER, J., dissenting

 September 5, 2017 Dr. James Bellard Competent3

 The reports from evaluations in which Defendant was found not competent

each note that either Defendant was not taking medications to address his mental

health issues, or that his medication dosage had been reduced prior to the evaluation.

There is no such notation for evaluations in which Defendant was deemed competent

to proceed.

 In addition, Dr. Bartholomew stated in his report from the December 18, 2016

evaluation that “[g]iven the stability of [Defendant’s] mental status and functioning

for the last year or more at Broughton Hospital, I believe it is reasonable that

[Defendant] will maintain this functioning in the foreseeable future and during a

trial.” A similar notation was made in the report from the August 15, 2017 evaluation

by Drs. Bartholomew and Utterback. This is consistent with prior reports that

Defendant’s condition had improved and that his medication had helped with his

symptoms.

 Defendant’s trial began in January, 2018. At a minimum, the trial court had

information that was only four months old that Defendant was competent and would

 3 Defendant’s counsel advised the trial court that Dr. Bellard spoke with Defendant that
morning and found him to be competent, and defense counsel conceded to a finding of competence in
open court.
 In addition, a report from a June 28, 2017 evaluation by Dr. Bellard exists, but was not filed
with the Watauga County Clerk of Court and not provided to the trial court. In that report, Dr. Bellard
indicates that “[t]he degree to which [Defendant experiences hallucinations] is directly correlated
with” Defendant’s medication.

 3
 STATE V. HOLLARS

 BERGER, J., dissenting

remain competent. This information was based on more than a year’s worth of

documentation while Defendant was housed in Broughton Hospital. This alone

distinguishes this case from State v. McRae, 139 N.C. App. 387, 533 S.E.2d 557

(2000), and the majority’s conclusion that there were concerns about the temporal

nature of Defendant’s competency is not reflected in the reports.

 Thus, there is nothing in the record that would have required the trial court to

conduct another pre-trial hearing. The Bartholomew-Utterback report clearly stated

that Defendant was competent and that he would maintain capacity to proceed for

the foreseeable future. Defense counsel did not alert the trial court to any concerns

at any time between August 15, 2017 and January 8, 2018. To the contrary, defense

counsel informed that Court that Dr. Bellard had determined that Defendant was

competent to proceed in September 2017 and conceded to a finding that Defendant

was competent.

 In addition, prior to trial, defense counsel informed the trial court that

 [Defendant]’s been diagnosed with bipolar disorder at
 various times. He has been - - there are a number of times
 where they talk through – in the – where the evaluators in
 these evaluations talk about how he may well be actively
 psychotic at the point in time in which they were talking to
 him. I don’t have any reason to believe he is that way as he
 is here today.

 Here, “defendant’s actions and courtroom behavior [at that time] did not

indicate that [he] was incompetent. He participated in the proceedings, his demeanor

 4
 STATE V. HOLLARS

 BERGER, J., dissenting

was appropriate, and his trial counsel represented that he was competent.” State v.

Johnson, 190 N.C. App. 818, 820, 661 S.E.2d 287, 289 (2008). In addition, “where, as

here, the defendant has been . . . examined relative to his capacity to proceed, and all

evidence before the court indicates that he has that capacity, he is not denied due

process by the failure of the trial judge to hold a hearing.” Id. at 821, 661 S.E.2d at

289 (citation omitted).

 Thus, the trial court did not err in not conducting another pretrial competency

hearing because there was no evidence before the trial court that Defendant was

incompetent at the time his trial began in January 2018.

 Defendant also contends, and the majority agrees, that the trial court erred by

failing to intervene sua sponte following an exchange between defense counsel and

the trial court. I disagree.

 There is nothing in the record that indicates Defendant was acting irrationally,

or otherwise incompetent on January 8 or 9, 2018, or that his attorney or the trial

court had any such concerns. On January 10, 2018, court convened for trial of

Defendant’s case at 9:32 a.m. Jury selection continued until 11:05 a.m. The court

released prospective jurors for a recess at 11:12 a.m., and after the jury left the

courtroom, neither defense counsel nor the prosecutor raised any concerns about

Defendant. Court reconvened at 11:32 a.m. and jury selection continued until 12:27

 5
 STATE V. HOLLARS

 BERGER, J., dissenting

p.m. Jurors were released for lunch at 12:35 p.m. After the jury left the courtroom,

there was again no concern raised about Defendant.

 After lunch, court resumed at 2:02 p.m. Jury selection was finalized and the

jury impaneled at 3:07 p.m. At 3:16 p.m. the jury left the courtroom for the afternoon

recess. Again, no issues were raised regarding Defendant when the jury left the

courtroom. Court resumed at 3:32 p.m. The trial court provided instructions to the

jurors, and opening statements were given by the prosecutor and defense counsel

until 3:43 p.m. The State thereafter called the victim to testify as its first witness.

 While the victim was testifying, defense counsel made an objection and asked

to be heard outside the presence of the jury. The jury was thereafter escorted from

the courtroom at 4:27 p.m. The trial court and counsel then engaged in a discussion

of 404(b) evidence, and the jury returned at 4:34 p.m. The trial court then gave a

limiting instruction to the jury, and the victim continued her testimony. Testimony

continued, and the trial court gave an instruction prior to the jury being released for

the evening at 5:00 p.m.

 The trial court then mentioned 404(b) evidence again and a recess was taken

at 5:03 p.m. They went back on the record at 5:03 p.m., at which time, defense counsel

stated the following:

 I just had a brief conversation with Mr. Hollars during
 which I began to have some concerns about his capacity
 and I would ask the Court to address him regarding that.
 ...

 6
 STATE V. HOLLARS

 BERGER, J., dissenting

 I asked him -- I've been asking him how he's doing and if
 he knows what's going on and up until just now he's been
 able to tell me what's been going on. He just told me just a
 few minutes ago that he didn't know what was going on.

(Emphasis added).

 The trial court replied to defense counsel:

 THE COURT: Well, when we start throwing around
 404(b) and 403, you'd have to have graduated from law
 school to have any inkling of what we're talking about. So
 I'm not sure what it is you -- I want you to be more specific.

 [Defense counsel]: He said -- I asked him -- he said – I
 asked him if he understood what was going on. He said,
 no, he didn't know what she was talking about. And that
 has not been the way he has been responding throughout
 this event, either yesterday or earlier today. And in light
 of the history with him, I just want to make sure. I just –
 I feel we need to make sure. And I'm not asking for an
 evaluation I would just ask for the Court to query him
 quickly to make sure that I'm just not -- make sure I'm
 seeing something that is not there.

 THE COURT: Well, I tell you what, it's been a long
 day, and I'd rather inquire of Mr. Hollars in the morning
 and give everyone a chance to rest. Give you a chance to
 talk to him and try to explain to him what's going on,
 especially with all of these rule numbers. I don't know if
 anybody could explain that to a non-lawyer and have them
 understand it.
 We could take a poll around here of non-lawyers and
 see if they understood it. I doubt many of them would. But,
 you know, essentially what is going on is that the victim in
 this case has been telling everybody what he did, and that's
 about a simple concept as you can imagine. Now, if he
 surely does not understand that for some reason, not that
 he remembers it or not, or whether he can think of some
 defense or something, that is not the case.

 7
 STATE V. HOLLARS

 BERGER, J., dissenting

 [Defense counsel]: I understand.

 THE COURT: But if the information coming from this
 woman about what he did, if he can understand that is
 what is happening, then I would say that the capacity
 situation hasn't changed any. We've got one, two -- I
 counted them before, three, four, five, six, capacity
 evaluations. The latest one was August 15, 2017, and this
 latest one found him capable of proceeding. We'll talk
 about it in the morning.

 [Defense counsel]: Yes, sir.

 THE COURT: Okay, thank you.

 There was not substantial evidence before the court at this time, indicating

that Defendant was incapable of proceeding, sufficient to require another competency

hearing. There is nothing in the record that addresses Defendant’s demeanor or

behavior during trial on January 10, 2018 that would indicate or suggest Defendant

was not competent. At the end of the day, defense counsel informed the trial court

that he and Defendant “had a brief conversation” and Defendant told defense counsel

that he did not know what was going on and that Defendant “didn’t know what [the

victim] was talking about.”

 As the trial court pointed out, the discussion concerning 404(b) evidence may

have been too complicated for Defendant to understand. The trial court also informed

defense counsel that Defendant’s capacity may be an issue if he did not understand

the victim’s testimony, not merely that Defendant was denying knowledge of the

 8
 STATE V. HOLLARS

 BERGER, J., dissenting

content of her testimony, or the ability to think of a defense to her testimony. The

“brief conversation” by Defendant and defense counsel did not produce “substantial

evidence before the court indicating that the accused may be mentally incompetent.”

Staten, 172 N.C. App. at 681, 616 S.E.2d at 656. Rather, at this point in the trial,

there was the very real probability that Defendant did not understand the intricacies

of 404(b) testimony, and that he had in fact heard and understood the victim’s

testimony. Perhaps at this point he fully comprehended the nature of his situation

in relation to the proceedings. While there may be speculation concerning

Defendant’s competence, there is no bona fide doubt as to Defendant’s competence.

 On January 11, the trial court asked if there was a need “for any further

inquiry as to Mr. Hollars’ capacity.” Defense counsel indicated there was not.

Presumably defense counsel had more than a “brief conversation” with Defendant

after the conclusion of court on January 10 to better understand Defendant’s

comments in court at the end of the 404(b) discussion. As this Court has noted, trial

courts give “significant weight to defense counsel’s representation that a client is

competent, since counsel is usually in the best position to determine if his client is

able to understand the proceedings and assist in his defense.” Blancher, 170 N.C.

App. at 174, 611 S.E.2d at 447 (citation omitted). Again, there was no substantial

evidence before the court that Defendant may be incompetent at this point in the

trial.

 9
 STATE V. HOLLARS

 BERGER, J., dissenting

 Even though not required because of the lack of substantial evidence, one could

argue that the trial court’s inquiry of defense counsel on the morning of January 11

satisfied the requirements of conducting a hearing on competence. See N.C. Gen.

Stat. § 15A-1002 (b)(1); See also State v. Gates, 65 N.C. App. 277, 282, 309 S.E.2d 498,

501 (1983) (When a hearing is required concerning Defendant’s capacity to proceed,

“no particular procedure is mandated. The method of inquiry is still largely within

the discretion of the [court].”) The majority implies that the trial court was required

to conduct a colloquy with Defendant at this point. While the trial court may do so,

it is not required to do so.

 Thus, because there was no bona fide doubt as to Defendant’s competence to

stand trial, there was not substantial evidence before the trial court that Defendant

was incompetent. I would find the trial court did not err when it began Defendant’s

trial, and proceeded with the trial, without undertaking another competency hearing.

In addition, I would dismiss Defendant’s motion for appropriate relief without

prejudice to his right to file an MAR in the trial court.

 10